## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAUN P. AUSTIN, | No. 4:24-CV-00886 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SCI-DALLAS MAILROOM STAFF, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 14, 2024

Plaintiff Shaun P. Austin filed the instant *pro se* Section 1983[1] action, alleging that prison officials at the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas), infringed his constitutional rights. Presently before the Court are Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to strike under Rule 12(f). The Court will grant Defendants' motion to strike and grant in part their Rule 12(b)(6) motion.

## I.    BACKGROUND

Austin is an experienced *pro se* litigant[2] who is currently confined at SCI Dallas. He initiated this Section 1983 lawsuit in April 2024 by filing a complaint

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  *See* Doc. 1-1 at 5-6 (listing previous cases).

in the Court of Common Pleas of Luzerne County, Pennsylvania.[3]  Defendants

timely removed the case to this Court via 28 U.S.C. § 1441.[4]

In his complaint, Austin asserts that his First Amendment rights have been

or are being violated by SCI Dallas officials in three ways.  He identifies these

claims as "A," "B," and "C" at the opening of his complaint,[5] but then changes

their letter identification and order in the body of his pleading.  To avoid

confusion, the Court will refer to Austin's three claims in numerical order as they

appear in the body of his complaint.

In claim 1, Austin alleges that pictures he ordered are being censored by

unidentified mailroom inspectors in an "inconsistent" manner.[6]  Austin provides

very few details as to this claim, but speculates that "one, possibly two 'mail

inspectors' at SCI Dallas [are] targeting" him with their inconsistent censorship,[7]

potentially as a form of retaliation.[8]

In a related claim—claim 3—Austin alleges that, when incoming mail is

censored, inmates are unable to view the confiscated material to determine if the

denial was appropriate or "if the pictures received were the ones ordered."[9]  Austin

contends that, under current Pennsylvania Department of Corrections (DOC)

---

[3]  *See generally* Doc. 1-1.
[4]  *See* Doc. 1.
[5]  *See* Doc. 1-1 at 4-5.
[6]  *Id.* at 6-7.
[7]  *Id.* at 7.
[8]  *See id.* at 4.
[9]  *Id.* at 11.

policy, the only way to review the censored material is to file a lawsuit.[10]  As relief for this claim, he primarily seeks to enjoin the DOC to permit review of the censored materials as part of the grievance process.[11]

Austin's final claim—claim 2—constitutes the bulk of his complaint.  He alleges that, since 2019, he has corresponded with Robert Cicchinelli, a former member of the Pennsylvania Prison Society and prior DOC inmate.[12]  Austin recounts that for several years, Cicchinelli sent him legal research, corresponded with him, and even visited him.[13]  According to Austin, in July 2023, the mailroom began to "block" correspondence from Cicchinelli.[14]  Austin complained via the grievance process, and on August 8, 2023, defendant Ransom—former Superintendent of SCI Dallas—reversed the block.[15]  Three days later, however, Ransom "reinstated" the bar, claiming that there was an issue with a letter from Cicchinelli but not explaining what the issue was.[16]

Austin further alleges that Ransom confiscated all previous correspondence from Cicchinelli from Austin's cell.[17]  According to Austin, Ransom made

---

[10]  *Id.*
[11]  *Id.* at 12.
[12]  *Id.* at 8.
[13]  *Id.* at 8-9.
[14]  *Id.* at 9.
[15]  *Id.*
[16]  *Id.*  Austin asserts that Ransom had determined that there was a problem with a letter from Cicchinelli from "October 2023," (*see id.*), but this date appears to be an error because it is two months *after* Ransom allegedly reinstated the ban based on the at-issue correspondence.
[17]  *Id.*

"inflammatory remarks" to the Pennsylvania Prison Society about Cicchinelli, resulting in Cicchinelli's expulsion from the organization.[18]  Austin asserts that there was no legitimate penological justification for blocking correspondence with Cicchinelli and speculates that the "mailroom" and Ransom blocked the correspondence as a way to retaliate against him.[19]

Austin alleges that by "inconsistently" censoring his incoming pictures (claim 1), Defendants violated the First Amendment by denying "access to the courts," retaliating against him, and presumably infringing his free speech rights with respect to incoming personal mail.[20]  He asserts that by refusing to allow him to review the censored pictures during the grievance process (claim 3), Defendants violated his access to the courts.[21]  Finally, Austin maintains that Defendants violated his access to courts, retaliated against him, and impinged his free speech rights by arbitrarily blocking correspondence with Cicchinelli (claim 2).

Defendants move to dismiss Austin's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike portions of the complaint pursuant to Rule 12(f).[22]  Austin eventually filed a brief in opposition,[23] and Defendants did not file a reply.  Defendants' motions, therefore, are ripe for disposition.

---

[18]  *Id.* at 10.
[19]  *Id.*
[20]  *Id.* at 4.
[21]  *Id.*
[22]  *See generally* Doc. 3.
[23]  Doc. 7.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[24]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[25]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[26]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[27]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[28]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[29]  Finally, the court must review the presumed-truthful allegations

---

[24]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[25]  *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[26]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[27]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[28]  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[29]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."[30] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[31]

Because Austin proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[32]  This is particularly true when the *pro se* litigant, like Austin, is incarcerated.[33]

## III.   DISCUSSION

As noted above, Austin's complaint asserts Section 1983 causes of action that sound in access to courts, retaliation, and free speech.  The Court will review the sufficiency of each cause of action in turn.

### A.    Access to the Courts

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."[34]  Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement."[35]  To adequately

---

[30]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[31]  *Iqbal*, 556 U.S. at 681.
[32]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[33]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[34]  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).
[35]  *Id.* (citing *Lewis*, 518 U.S. at 354-55).

plead an access-to-courts claim that is backward-looking in nature,[36] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[37]  The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy."[38]

Simple recitation of the access-to-courts elements reveals that Austin's claims fail.  Austin posits that claims 1, 2, and 3 of his complaint show that SCI Dallas officials infringed his access to the courts, but he has not plausibly alleged any element of this cause of action.  First, and most importantly, Austin has not alleged that he lost the opportunity to pursue a nonfrivolous underlying challenge to his criminal sentence or a conditions-of-confinement claim.  In fact, there is no "underlying claim" mentioned in Austin's complaint.  Second, Austin has not alleged that he has no other remedy other than an access-to-courts lawsuit.  Thus, none of the claims raised in Austin's complaint plausibly states an access-to-courts violation.  Any such claim, therefore, must be dismissed.

---

[36]  There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time."  *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

[37]  *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).

[38]  *See Christopher*, 536 U.S. at 416-17.

### B.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[39]  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[40]

There are a variety of ways to establish causation for a First Amendment retaliation claim.  One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[41]  When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months.[42]  However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by

---

[39]  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

[40]  *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

[41]  *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[42]  *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).

a defendant."[43]  Another approach is to demonstrate "a pattern of antagonism

coupled with timing."[44]  Finally, causation can be inferred "from the evidence

gleaned from the record as a whole."[45]  Logically, a plaintiff asserting retaliation

"will have to show . . .  that the decision maker had knowledge of the protected

activity[.]"[46]

Austin alleges that Defendants retaliated against him by inconsistently

censoring pictures he ordered (claim 1) and by blocking correspondence with

Cicchinelli (claim 2).  Austin appears to assert that his prior lawsuits are the

constitutionally protected conduct.

There are two significant problems with Austin's retaliation claims.  First,

"inconsistent" censoring of incoming pictures that potentially contain nudity[47]

likely would not rise to the level of an adverse action, especially when Austin

admits that he is not challenging the prison's ban on nudity for incoming mail.[48]  It

is likewise debatable whether blocking correspondence with a non-familial, private

acquaintance would constitute an adverse action for a First Amendment retaliation

claim.

---

43  *Id.*
44  *DeFlaminis*, 480 F.3d at 267.
45  *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).
46  *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).
47  *See* Doc. 7 at 3 (indicating that some pictures involved "hands covering breasts").
48  *See id.*

Assuming, without deciding, that Austin has plausibly alleged adverse actions, the second and more fundamental problem with his complaint is that his conclusory retaliation claims lack a plausible causal connection to Defendants. Austin asserts that he filed several prior lawsuits against the "DOC" and speculates that this is the reason why Ransom and the unidentified mailroom employees retaliated against him.

However, it is well settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action.[49] Such general allegations fail to establish or even infer knowledge of the protected conduct and they likewise fail to show why a defendant would take the alleged adverse action.

Indeed, Austin's prior lawsuits have no connection (either temporal or substantive) to the instant case. First, in *Austin v. Hammers*, No. 1:18-cv-01949

---

[49] *See, e.g.*, *Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).

(M.D. Pa.), which case was filed in 2018, Austin sued several prison officials at SCI Benner Township.  That case was dismissed with prejudice in 2020 for failure to state a claim upon which relief may be granted.[50]  Next, in July 2020, Austin sued "Corrections Officer Hammers" (an officer at SCI Benner Township) in state court.[51]  That case was settled in early 2024.[52]  In May 2022, Austin filed another lawsuit in state court against a John Doe "Staff Member of the DOC Security Processing Center," located in Bellefonte, Pennsylvania.[53]  And in February 2023, Austin filed suit against the DOC Disability Accommodation Board in state court (seeking service through the DOC's Office of Chief Counsel in Mechanicsburg, Pennsylvania).[54]  That case was removed to federal court and settled in November 2023.[55]

As the foregoing details plainly demonstrate, Austin has not sued *any* SCI Dallas official, much less a Defendant named or implicated in the instant lawsuit. His retaliation claims are entirely conclusory and lack any plausible causal connection to Defendants.  Consequently, Austin's retaliation claims must be dismissed under Rule 12(b)(6) for lack of causation.

---

[50]  *See Austin v. Hammers*, No. 1:18-cv-01949, Docs. 46, 47 (M.D. Pa. Aug. 30, 2020).

[51]  *See Austin v. Hammers*, No. 2020-1759 (Pa. Ct. Com. Pl. Centre Cnty.).

[52]  *See id.*

[53]  *See Austin v. Doe*, No. 2022-1063 (Pa. Ct. Com. Pl. Centre Cnty.).

[54]  *See Austin v. DOC Disability Accommodation Bd.*, No. 4:23-cv-00361 (M.D. Pa).

[55]  *See id.*, Docs. 22, 23.

## C.    First Amendment Free Speech – Incoming Mail

Austin's final cause of action sounds in free speech infringement with respect to incoming nonlegal mail.  Inmates retain a First Amendment right to send and receive personal mail.[56]  That right, like other constitutional rights in the prison context, is not absolute, as prison administrators must "strike a delicate balance" between "order and security of the internal prison environment" and the "legitimate demands of those on the 'outside' who seek to enter that environment . . . through the written word."[57]  Thus, while a single instance of interference with incoming mail generally does not amount to a constitutional violation,[58] repeated interference or censorship (*i.e.*, withholding delivery of incoming correspondence) without a legitimate penological purpose may violate an inmate's First Amendment rights.[59]

Austin's claim regarding "inconsistent" censoring of incoming pictures (claim 1) fails to state a plausible free speech violation.  Austin's single contention that the censorship of certain pictures at SCI Dallas has been "inconsistent" simply does not rise to the level of plausibly alleging a First Amendment free speech

---

[56]   *See Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006).

[57]   *Thornburg v. Abbott*, 490 U.S. 401, 407 (1989).

[58]   *See Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

[59]   *See id.*; *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011) (noting that prison officials may impose restrictions on inmate correspondence if those restrictions "are reasonably related to legitimate penological interests" (quoting *Turner*, 482 U.S. at 89)).

infringement.  Austin, in fact, does not allege that the censorship was against DOC policy or even incorrect, he simply asserts that it was "inconsistent."  Moreover, the DOC's mail policy—DC-ADM 803—outlines a specific method for challenging a prison's determination that incoming pictures or publications violate prison guidelines.[60]  Austin has not alleged how his First Amendment free speech rights were violated by Defendants' purported conduct involving the screening of incoming potentially nude or obscene pictures.

Austin's claim with respect to the alleged blocking of correspondence with Cicchinelli is a different matter.  Austin's allegations against Ransom suffice to state a plausible First Amendment free speech claim.  That is, Austin's assertion that Ransom blocked all correspondence with Cicchinelli without a legitimate penological purpose—if true—could rise to the level of a First Amendment free speech violation with respect to incoming personal mail.[61]  This Section 1983 claim, and *only* this claim, survives Defendants' Rule 12(b)(6) challenge.

---

[60]  *See* COMMONWEALTH OF PA., DEP'T OF CORR., INMATE MAIL & INCOMING PUBLICATIONS, Policy No. DC-ADM 803 § 2(A)(5), (D)-(E) (Aug. 10, 2020), https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf.

[61]  Austin's related allegations against the mailroom staff fall short because he specifically alleges that Ransom first reversed the block and then reinstated the block three days later on his own volition without any involvement by mailroom staff, clearly indicating that Ransom is the state official who allegedly violated Austin's free speech rights with respect to the correspondence ban.  *See also* Doc. 7 at 4 (arguing that "Ransom personally established the ban," ordered the prior correspondence with Cicchinelli "confiscated," and reestablished the ban and refused to provide Austin with a reason for it).

### D.    Motion to Strike

Defendants move to strike several allegations in Plaintiff's complaint indicating that Ransom "was compelled to resign due to an Attorney General Investigation," was "removed or otherwise 'escorted' out of the facility," and was arrested on March 13, 2024.[62]  Austin objects to Defendants' motion to strike only as to the first two statements.[63]

The Court will grant Defendants' motion to strike as to all three allegations. The at-issue assertions regarding Ransom's purported termination, removal, and arrest are plainly impertinent to the First Amendment claims raised in Austin's complaint.[64]

### E.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[65]  The Court will dismiss all claims except Austin's First Amendment free speech claim with respect to Ransom's alleged ban on correspondence with Cicchinelli.  Dismissal of the access-to-courts claims will be with prejudice, as it is clear that Austin cannot state such a claim because he has

---

[62]  Doc. 1-1 at 7-8.

[63]  *See* Doc. 7 at 5.

[64]  *See* FED. R. CIV. P. 12(f) (giving discretion to court to strike from a pleading any "redundant, immaterial, *impertinent*, or scandalous matter").

[65]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

not lost the opportunity to pursue an underlying challenge to his criminal sentence or a conditions-of-confinement claim.  Dismissal of the retaliation claims will also be with prejudice, as Austin has not (and cannot) plausibly allege a connection between his prior lawsuits and the SCI Dallas Defendants sued herein.

While dismissal of the free speech claim against the unidentified mailroom employees is without prejudice, leave to amend the instant pleadings will be denied.  Austin is essentially attempting to bring multiple, unrelated lawsuits against different defendants in a single complaint.  That is, Austin's First Amendment claim involving alleged "inconsistent" censorship of his pictures (claim 1) plausibly targets only the mailroom staff,[66] while his unrelated First Amendment claim regarding the communication ban with Cicchinelli (claim 2) plausibly targets only Ransom.

Because the allegations that make up Austin's Section 1983 claims against the unidentified mailroom staff are not part of the "same transaction, occurrence, or series of transactions or occurrences" underlying the instant First Amendment

---

[66] Although Austin attempts to connect Ransom to the picture censorship claims, Austin's only allegation is that Ransom reviewed and denied grievances on this issue, which does not suffice to plead personal involvement for a Section 1983 claim.  *See Dooley*, 957 F.3d at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

free speech claim against Ransom, and because there is no "question of law or fact common to all defendants" such that these claims and defendants could be permissively joined together in this action, Austin cannot file an amended complaint in this case that combines these disparate claims.[67]  He is free to file an additional lawsuit based on these unrelated allegations, although the Court notes that—if filed in federal court—Austin would be required to pay the filing fee for the additional case.[68]  Furthermore, Austin would have to allege sufficient facts that would plausibly state a First Amendment free speech claim against the mailroom employees, as he has not done so in his original complaint.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion to strike under Federal Rule of Civil Procedure 12(f).  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[67]  *See* FED. R. CIV. P. 20(a)(2)(B).

[68]  *See id.*; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits" not only to prevent confusion but also to ensure that prisoners pay the required filing fees under the PLRA); *Redding v. Bilinski*, No. 3:15-cv-1047, 2015 WL 3710842, at *1-2 (M.D. Pa. June 12, 2015) (same).